UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

MAURICE SESSUM,

Defendant.

---

15 Cr. 667-6 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

On June 1, 2020, this Court issued an order denying the motion of Defendant Maurice Sessum for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #594 (the "June 1 Order")). *See United States* v. *Sessum*, No. 15 Cr. 667-6 (KPF), 2020 WL 2836781 (S.D.N.Y. June 1, 2020). Two months later, Mr. Sessum moved for reconsideration of the Court's decision, citing certain evidence that was not available at the time of the Court's original decision and arguing that the Court had misinterpreted other evidence that supported Mr. Sessum's original motion. (Dkt. #607). Again, the Government opposes the motion. (Dkt. #612). As set forth herein, the Court denies the motion for reconsideration and grants the alternative motion for a recommendation to the Bureau of Prisons (the "BOP").

## APPLICABLE LAW

Mr. Sessum does not source his reconsideration motion to any rule or precedent. The Court believes the appropriate rule to be Local Criminal Rule 49.1, which provides in relevant part:

> Unless otherwise provided by statute or rule, or unless otherwise ordered by the Court in a Judge's Individual

> Practices or in a direction in a particular case, upon any motion, the papers shall be served and filed as follows:
>
> …
>
> (d) A motion for reconsideration or reargument of a Court order determining a motion shall be filed and served within fourteen (14) days after the Court's determination of the original motion. A memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked shall accompany the motion.

Local Criminal Rule 49.1(d).[1]

Defendant's motion is untimely, and cases decided under the predecessor rule to Local Criminal Rule 49.1 have found that such untimeliness is itself a sufficient basis for denial. *See United States* v. *Yannotti*, 457 F. Supp. 2d 385, 390 (S.D.N.Y. 2006); *see also United States* v. *Nelson*, No. 10 Cr. 414 (PKC), 2011 WL 2207584 (S.D.N.Y. June 3, 2011). However, courts retain the discretion to excuse an untimely filing, and inasmuch as the Government has not argued that Mr. Sessum's motion was untimely, the Court will consider it on the merits.[2]

---

[1] Before the enactment of Local Criminal Rule 49.1(d), courts in the Southern and Eastern Districts of New York traditionally used Local Civil Rule 6.3, which also specified a 14-day deadline for the filing of motions for reconsideration. *See generally United States* v. *Carollo*, No. 10 Cr. 654 (HB), 2011 WL 5023241, at *2 (S.D.N.Y. Oct. 20, 2011) ("Although neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules of this Court address the proper standard for a motion for reconsideration in criminal cases, courts in this district have applied the standard of Local Rule 6.3."). Because Criminal Local Rule 49.1(d) is of comparatively recent vintage, the Court cites to cases decided under both Local Rules.

[2] *See generally United States* v. *Okparaeke*, No. 17 Cr. 225 (NSR), 2019 WL 4233427, at *2 (S.D.N.Y. Sept. 6, 2019):

> Although courts may excuse an untimely filing, there generally must be good cause to do so. *See Davidson* v. *Scully*, 172 F. Supp. 2d 458, 462-63 (S.D.N.Y. 2001) (excusing *pro se* plaintiff's untimely filing because of his *pro se* status and the fact that plaintiff had filed a notice of motion with the clerk in a timely fashion).

The standards for reconsideration among the civil and criminal rules are largely the same. As this Court has observed previously:

> [T]he moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (observing that the standard for granting motions for reconsideration is "strict").
>
> "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish* v. *Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation and quotation marks omitted).
>
> The Second Circuit has made clear that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories ... or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Such a motion likewise should not be made "reflexively to reargue 'those issues already considered when a party does not like the way the original motion was resolved.'" *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011) (quoting *Makas* v. *Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted)).

---

Critically, a moving party's *pro se* status will not, on its own, excuse a delay. *See Fabricio* v. *Artus*, No. 06 Civ. 2049 (WHP) (GWG), 2013 WL 2126120, at *1 (S.D.N.Y. Apr. 18, 2018) (rejecting movant's argument that court should have treated untimely motion as timely because he was not a lawyer); *Grullon* v. *United States*, No. 99 Civ. 1877 (JFK), 2005 WL 1560479, at *1 (S.D.N.Y. June 28, 2005) ("*Pro se* status does not excuse noncompliance with the Local Rules.").

*United States* v. *Almonte*, No. 14 Cr. 86 (KPF), 2014 WL 3702598, at *1 (S.D.N.Y. July 24, 2014); *accord United States* v. *Pinto-Thomaz*, No. S2 18 Cr. 579 (JSR), 2019 WL 1460216 (S.D.N.Y. Jan. 10, 2019); *United States* v. *Baldeo*, No. S1 13 Cr. 125 (PAC), 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015) (summary order).

The Court also pauses to note that, since its original order, the Second Circuit has clarified the scope of a district court's discretion in resolving motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A). Specifically, the Second Circuit held that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling." *United States* v. *Brooker*, — F.3d —, No. 19-3218-cr, 2020 WL 5739712, at *6-7 (2d Cir. Sept. 25, 2020). This Court had come to a nearly identical conclusion in a prior case, and had viewed the Guidelines and related policy statements as instructive, but not mandatory. *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary

4

and compelling reason for compassionate release.").[3]  Here, too, the Court will not consider itself bound by U.S.S.G. § 1B1.13 or the BOP Program Statement, though it will look to both for guidance.  *See United States* v. *Thrower*, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

## DISCUSSION

### A.     The Court Denies the Motion for Reconsideration

Mr. Sessum begins by presenting evidence not available at the time of the Court's original decision — namely, evidence that inmates and staff at the USP Lewisburg complex, which includes the satellite camp at which he is housed (collectively, "USP Lewisburg"), have recently tested positive for COVID-19.  (*See* Dkt. #607 at 1-2).  He further contends that, if anything, this evidence understates the prevalence of the virus at the facility because of the inadequacy of testing there.  The Court has reviewed information provided by the BOP concerning both the spread of COVID-19 at USP Lewisburg and the degree of testing there, and it concludes that the number of recent positive tests, taken alone or in conjunction with Mr. Sessum's other arguments, does not amount to extraordinary and compelling reasons for compassionate relief,

---

[3]   The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion.  In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  *United States* v. *Brooker*, — F.3d —, No. 19-3218-cr, 2020 WL 5739712, at *8 (2d Cir. Sept. 25, 2020).

5

whether in the form of the release that Mr. Sessum seeks or a reduction in sentence.

According to the BOP, there are currently four inmates and two staff members at USP Lewisburg who test positive for the coronavirus; eighty-three inmates and twelve staff members have recovered from it. *See* https://www.bop.gov/coronavirus/ (last accessed October 30, 2020). Thus, while there does appear to have been an outbreak of the virus at the facility, the BOP has brought that outbreak under control. Relatedly, the Court rejects Mr. Sessum's argument (*see* Dkt. #607 at 2; Dkt. #613 at 3-4), that these figures would be larger were it not for the inadequacy of the BOP's testing. The BOP states that 740 inmates at USP Lewisburg have been tested, which is nearly two-thirds of the inmate population; 13 additional inmates are awaiting await test results; and 85 inmates have tested positive. *Id.* And while the Court agrees in principle with Mr. Sessum's argument that staff members at BOP facilities should be tested regularly (*see* Dkt. #607 at 2), after reviewing the statistics on positivity at USP Lewisburg, it cannot conclude that the BOP's inability to mandate testing of staff members at that facility warrants the extreme relief sought.

Mr. Sessum also takes issue with several of the Court's findings in the June 1 Order, including its finding that Mr. Sessum's medical conditions are not well managed. (*See* Dkt. #607 at 4; Dkt. #613 at 2-3). On the specific issue of Mr. Sessum's hypertension, these arguments are a double-edged sword — to the extent Mr. Sessum's condition is not improving, it is not for

6

lack of trying on BOP's part.  In Exhibit A to Mr. Sessum's opening letter brief, the clinician's notes state explicitly that while discussing the rationale for controlling his blood pressure to a particular target number, Mr. Sessum "declines change in meds."  (Dkt. #607-1 at 2; *see also id.* at 4 ("Explained [divergences from target blood pressure reading that had occurred over the preceding 11 months] and rationale for control to [Mr. Sessum], but continues to decline change in regimen in favor [of dietary approach.]")).  Similarly, in Exhibit D to the opening letter brief, the clinician's notes reflect concern that Mr. Sessum had not been compliant with his medication regimen.  (Dkt. #607-4 at 2).[4]

Mr. Sessum also notes that he has been diagnosed with additional medical conditions, including chronic kidney disease and thalassemia, while incarcerated.  (*See* Dkt. #607 at 5; Dkt. #613 at 2-3).  The Centers for Disease Control and Prevention (the "CDC") has indicated that individuals with these conditions are at increased risk of severe illness from the coronavirus. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

---

[4]    Mr. Sessum also faults the Court for stating that "Mr. Sessum is 43 years old, which would otherwise place him at a comparatively low risk of hospitalization or death from COVID-19."  (Dkt. #607 at 3 (citing *United States* v. *Sessum*, No. 15 Cr. 667-6 (KPF), 2020 WL 2836781, at *3 (S.D.N.Y. June 1, 2020))).  The Court stands by its statement, which was specifically addressed to Mr. Sessum's age alone and was borne out by the statistics to which the Court cited.

(accessed October 30, 2020).  The Government rightly quibbles with the definitiveness of Mr. Sessum's putative diagnoses.  (*See* Dkt. #612 at 3).  But the fact remains that in monitoring, diagnosing, and treating Mr. Sessum's conditions, the BOP is providing appropriate medical care.  The Court's review of Mr. Sessum's medical records shows great strides by Mr. Sessum with respect to his health, including the aforementioned attention to his diet, a focus on exercise, and the concomitant loss of approximately 60 pounds during his first year of incarceration.  (*See, e.g.*, Dkt. #607-1, 607-4).  Contrary to what Mr. Sessum now claims (*see* Dkt. #607 at 5), it is reasonable to believe that he will continue to lose weight while imprisoned to the point where the BOP will approve him for spinal surgery.

Mr. Sessum notes several changes to his family circumstances, including the passing of his father, the pandemic-affected job responsibilities of his former wife, and the needs of his son.  (*See* Dkt. #607 at 7).  The Court extends its condolences to the Sessum family on the loss of its patriarch, and conveys its appreciation to Ms. Jacalyn Sessum for her work on the front lines of the COVID-19 pandemic.  However, many defendants in federal prisons have comparable family circumstances, and the ones cited here do not suffice as extraordinarily and compelling reasons for the relief Mr. Sessum seeks.

Finally, Mr. Sessum's motion for reconsideration includes a personal statement to the Court outlining his remorse.  (Dkt. #607-6).  The Court has no doubt that Mr. Sessum is deeply troubled by the pain that he has caused his family and loved ones; he has repeatedly, and sincerely, expressed these views.

The fact remains, however, that Mr. Sessum still does not grasp the egregiousness of his conduct to the victims, and still has not accepted responsibility for the life-altering harms that he himself wrought.  Whatever he says now must be viewed in light of his earlier statements during the conspiracy and his actions during his prosecution.  Mr. Sessum's lies and fraud are detailed at length in his Presentence Investigation Report (*see* PSR ¶¶ 65-86), and will not be repeated here.  But in his sentencing letter to the Court, Mr. Sessum endeavored to shift the blame to Travell Thomas, and faulted himself only for his naïveté and his purported inability to walk away from the fraud.  (Dkt. #394-1).  At his sentencing, Mr. Sessum doubled down on these arguments, lamenting the fact that he "didn't do enough to control what went on" at Four Star, without acknowledging how much of "what went on" was directly attributable to him.  (Dkt. #462 at 47).  After receiving a substantial break at sentencing, Mr. Sessum violated his plea agreement with the Government and filed an appeal that he maintained for a year before withdrawing.  *See United States* v. *Sessum*, No. 17-2254 (2d Cir. July 19, 2018) (motion to withdraw appeal).  And during the pendency of that appeal, Mr. Sessum filed motions under 28 U.S.C. § 2255 to vacate his conviction and sentence; in addition to raising groundless legal arguments, Mr. Sessum advanced plainly false allegations concerning the assistance he had received from his prior counsel.  (*See, e.g.*, Dkt. #503, 524, 525).  *See generally Sessum* v. *United States*, Nos. 15 Cr. 667-6 (KPF) and 18 Civ. 6222 (KPF), 2020 WL 1243783 (S.D.N.Y. Mar. 16, 2020).  It is this dichotomy — between Mr.

Sessum's abiding concern for his family and his steadfast refusal to accept responsibility for the harms that he visited on third parties — that confirms this Court's earlier conclusion: Even if the new facts and arguments presented by Mr. Sessum amounted to extraordinary and compelling circumstances, which they do not, the Court would nonetheless deny Mr. Sessum's application based on its consideration of the § 3553(a) factors.

**B.    The Court Grants the Motion for a Recommendation**

Alternatively, Mr. Sessum requests that the Court recommend to the BOP that he be considered for a furlough or other temporary release to home confinement for a fixed or indeterminate period, pursuant to 18 U.S.C. § 3622. (*See* Dkt. #607 at 8-9). That statute provides in relevant part that:

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to —
>
> (a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of —
>
> ***
>
> (3) obtaining medical treatment not otherwise available;
>
> ***
>
> or

> (6) engaging in any other significant activity consistent with the public interest.

18 U.S.C. § 3622.  This Court concurs with the analysis of the furlough statute that was ably provided by Judge Furman in *United States* v. *Roberts*, — F. Supp. 3d. —, No. 18 Cr. 528-5 (JMF), 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020).  In particular, the Court agrees that (i) "[e]ither of the highlighted subsections may well be sufficient to justify [Mr. Sessum's] temporary release under the circumstances"; (ii) "such release can be extended beyond the thirty days" provided in the statute; (iii) "the decision of whether to grant … a furlough under Section 3622 is committed to sole discretion of the BOP"; and (iv) "nothing in Section 3622 'prevents this Court from recommending' that BOP exercise its discretion to grant [Mr. Sessum's] temporary release." *Id.* at *3-4 (internal citation omitted)); *see also United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *7 (S.D.N.Y. June 8, 2020) (recommending furlough), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020); *United States* v. *Meiri*, No. 15 Cr. 627 (ER), 2020 WL 3605556, at *3-4 (S.D.N.Y. July 2, 2020) (recommending furlough).

The Court makes that recommendation here.  Considering all of the circumstances discussed in this Order, the Court believes the fairest course of action with respect to Mr. Sessum may be temporary release pursuant to 18 U.S.C. § 3622.  The Court is unclear on the issue of whether such an application has been submitted on his behalf.  If it has not, the Court encourages defense counsel to file such an application and to include this Order with the application.  If the application has been submitted, the Court

11

directs defense counsel to forward this Order to the relevant personnel at USP Lewisburg.

## CONCLUSION

For the foregoing reasons, Defendant Maurice Sessum's motion for reconsideration of the Court's prior decision denying his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  His motion for a recommendation to the BOP regarding the BOP's exercise of its discretion under 18 U.S.C. § 3622 is GRANTED.

SO ORDERED.

Dated:   October 30, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge